Good morning. May it please the Court. Sean Kennedy on behalf of Petitioner Teddy Williams. Your Honor, this case raises the question whether a mentally ill defendant who fires his counsel because of delusional beliefs has really made a voluntary waiver of the In this case, we would submit that Mr. Williams definitely can't meet the standards set forth in Godinez v. Moran. You know, it's a troubling case. However, to me, that is not the key question. The key question is the deference that we're required to extend under 2254 to the State Court. Could you address that? Absolutely, Your Honor. I think the Court is correct that in the context of the AEDPA, we can't just start on a clean slate. But there are a couple of reasons that I think the Court should look closely at the issue despite the AEDPA. The first one is this, that deference is not an application of review. And as Miller L2 has shown us, there are times when State courts get it so wrong that it is an objectively unreasonable factual determination. I agree with you. However, when I read the transcript of this defendant, you know, I read the reports. He thinks he's so sexually attractive to everybody and they're all after him sexually. It sounds nuts. But then I read what he says in court, and he sounds like an intelligent, rational guy. Under the 14th Amendment, I'm entitled to counsel at all stages during court proceedings and adequate representation. And you know, Mr. Moore has actually acknowledged himself he has too many cases, and I think that will be enough for him to be removed. Looking at the 14th Amendment, I have a right to present witnesses on my behalf. The 6th and 14th in a speedy fashion, looking at the inadequacy, we're already past 60 days. He doesn't sound nuts. He sounds pretty intelligent and competent. And in view of that, and the lawyer that you argue should have told the judge that his client was nuts, he was only the lawyer for a really short time. There's really no showing that he knew. And it seems like, how can I say that the state court was just so far out of line that we don't have to defer to it under 2254? Well, Your Honor, I really respect that view, and I think it's part of the problem that happened in this case. If you read the California Court of Appeal opinion, there is hyper-focus on that one moment in time in the trial when the threat of waiver is executed. But as we know, under the double doctrine of competency, it's not just procedural competency, it's substantive too. And that requires the court to consider the proceedings as a whole. And when one reads the whole proceedings, Mr. Williams' illusion of being very intelligent starts to unravel. And that's why there should have been a hearing on this specific issue. You can be nuts and still be intelligent. Absolutely. And that's why we should have had a hearing on this issue, because I think he is very intelligent. I mean, to this day, there's a pro se filing in district court accusing me of sexual misconduct against Mr. Williams. So we have a longstanding mental illness that appears to have hyper- In the trial court, on the motion to refer him to trial, was there a request for an evidentiary hearing beyond what actually occurred? I'm talking to State trial court on the actual competency as opposed to the procedural competency question. No, there wasn't, Your Honor. A public defender who is another member of Mr. Moore's office, a fellow public defender, that was I don't understand, however, that there's an ineffectiveness claim against him, which worries me. That seems to me to be who was ineffective here. So if there was no request for an evidentiary hearing, and no ineffectiveness claim, if I'm right, against that member of the public defender's office, then why does he get to do it now? Well, Your Honor, I think that there is an ineffectiveness claim against his trial counsel, both who are deputies of the same office. And Mr. Weisberg is a Santa Barbara deputy public defender, and Mr. Moore is a deputy public defender. And Mr. Moore had already testified against Mr. Williams at his trial. Neither of them asked for an inquiry, and that's the problem. That there should have been an inquiry that was actually Do you think that there was an exhaustive claim of ineffective assistance against the second counsel? When I refer to trial counsel, I was referring to his counsel throughout the proceedings. I didn't understand that the Court would consider two deputy public defenders from the same agency to be different. All of his counsel ought to have asked. What is the evidence that at the relevant times when they were proceeding with this case, either the lawyers or the state judge should have recognized that the man was a paranoid schizophrenic with a sexual focus? Well, I think it should have begun at the preliminary hearing, where we have the extraordinary act of a defendant taking the stand at his preliminary hearing, who is represented by yet another Santa Barbara public defender, and testifies that he was arrested because the male police officer wanted to fondle his genitals and sexually molest him, and had done that numerous times before in front of a crowd of cheering women who said, don't do him like that. In addition, Mr. Williams alleged on the record that he had told Mr. Moore that he had mental problems before the trial, and Mr. Moore didn't want to present that. There really has not been an inquiry. Where was that, by the way? Some of what was in your briefs about what Mr. Williams said, I had a hard time finding. May I have a moment, Your Honor? Your Honor, I don't have the ER site in front of me. We certainly know that the trial court was aware of the preliminary hearing because the trial judge – I understand that. I'm asking about what he told Mr. Moore. It was – I will concede, Your Honor, that it was late after the convictions that he reported to the court that he had told Rory Moore that he wasn't mentally ill. It was not early in time. I'm not even sure I saw that, but go ahead. When we look at the record as a whole, which substantive competency directs the court to do, the record as a whole reveals a startling pattern of mental illness and delusions. And this court in Deere has stated that it is very possible that a Faretto waiver would not be voluntary if it was premised on paranoid delusions about trial counsel. There is so much evidence in the record here that that occurred, that at some point in time, even if it was not right at the beginning of the trial, that a trial judge had a duty to hold a hearing and inquire on this specific issue. That's what this court held in Torres v. Prunty, where the court found that the failure to hold the hearing in light of the evidence before the court was objectively unreasonable. Counsel, I was just looking at it again to see if I'd missed it. What you said about the preliminary hearing does not appear to be discussed in the California Court of Appeal decision. Was it brought to their attention that he took the stand at the preliminary hearing and said the police arrested him so that the policeman could fondle his genitals? Your Honor, I'm sorry, I don't know the answer to that. I think that's true that it is not discussed in the California Court of Appeal's opinion, but it was part of the CT. I'm thinking that's a lot to explain away. It sure is. And if it had been brought to their attention, I'm sure that they would have talked about it. But maybe they didn't. Was it brought to their attention? I just – I'm so sorry that I don't know the answer to the Court's question. Thank you. But was it the same judge as at the trial? No, it was not, Your Honor. It was not the same judge or the same litigants. The DA was different and the public defender was different. However, the trial judge who presided over trial referred to his testimony at the preliminary hearing about this specific issue, about the wrongful allegations of sexual misconduct. He'd read the transcript. He must have, in light of his statements during the trial. Would he have had a transcript? Pardon me? Do they prepare transcripts of preliminary hearings? Absolutely, Your Honor. And the preliminary transcript – The judge gets a copy of it? Yes. And the preliminary transcript is actually a part of a state court record that was before the California Court of Appeal. I didn't ask you about the California Court of Appeal. I meant the trial judge. In Alaska, the preliminary hearing would not have been transcribed prior to the trial. There's no way the trial judge would have seen a transcript. And I'm asking you whether the practice in this locality was that it is. I just misunderstood. It's very common in California to have the preliminary hearing transcript transcribed because there are going to be handoffs amongst the agencies. And, in fact, that's exactly what happened here, that the deputy public defender who did the prelim handed the case off to another deputy public defender for the trial, and the transcript was probably part of his preparation. I have one slightly nuanced question. You began where I thought you should have begun with the question of whether there was a knowing and voluntary waiver of counsel given this sexual accusation. And has that issue as such been exhausted? I mean, that exact issue, which is really – let me understand what I think it is. I think it's a slightly different – I think there are two things that go on. In general, the standard for competency with regard to self-representation is the same as competency otherwise. But in a self-representation situation, there is the additional requirement that the waiver be knowing and voluntary and that the mental element can come in there in a different way. Right? Has that separate issue been exhausted and discussed either in the California Court of Appeals or in the district court? I believe that it has. It definitely was discussed by me extensively in the district court. And it is the heart of Godinez. And Godinez was the controlling law. It's a – Well, actually, it's not the heart of Godinez. It's what you're doing is really remanded on. It never really did much of it. And what I understand you to be saying is somebody who believed that his lawyer was sexually assaulting him wasn't making a knowing and voluntary decision to forego having a lawyer. That's what I'm saying, yes. That's a much more specific claim than he's just overall crazy and can't cooperate with his lawyer. It's different. Well, Your Honor, I – the reason that I don't think – but it kind of isn't quite there in a lot of the pleadings or I'm wondering if it is. Well, I think it is because, Your Honor, and it's just from my perspective, it is the heart of Godinez having represented so many mentally ill defendants. That's what it really turns on because competency, as we all know, is a very low standard, and many mentally ill people are competent. The question is how does the mental illness play itself out with the respect to self-representation and counsel? That's not the definition. This is how does it play out with regard to the decision to have self-representation because as to whether or not you can have a knowing and voluntary waiver given your particular form of craziness. That's right, and that's – That's not the definition. Well, I think that they're both part of Godinez, which was discussed extensively. You're – you've exhausted your time. I'm sorry, Your Honor. Thank you. Thank you, counsel. Good morning, Your Honors. Jason Tran on behalf of Respondent. I'd just like to begin by answering two questions posed by the Court. Judge Kleinfeld, you asked whether a preliminary hearing transcript is part of the trial court record. And, yes, I've seen many trial court records that include the preliminary hearing transcript. In fact, the appellate court transcript – the appellate court record is based on the trial record. So everything that is – Do you have an explanation then for why the trial – neither the trial judge nor the California Court of Appeal did anything about the defendant saying that the police arrested him so that one could fondle his genitals and they did it in front of this crowd? The only explanation I have, Your Honor, is that based on the testimony of attorneys, including the prosecutor, that have worked with the petitioner in the past – because this is not – this was not the petitioner's first case in that court – that he has a pattern of accusing everyone of molesting him for purposes of delaying proceedings, of delaying court proceedings. And that was very evident throughout trial. Every time something – a ruling – went against him, he would complain of pain or he would raise claims of disability. In fact, most telling was that he did not accuse his pretrial attorney more of sexual misconduct until after he was convicted and right before sentencing. Let me ask you now. Was all this sexual stuff that sounds like mentally ill persons' fantasies brought to the attention of the California Court of Appeal? Yes. Yes. In the appellant's opening brief, that was discussed. As I recall, all these allegations of sexual misconduct, of police brutality, of trial court conspiracy to, as he put it, make him disappear in the system, all these facts were brought to the attention of the Court of Appeal. And what the Court of Appeal did was look at them in light of all the other overwhelming evidence in the trial court transcript, as Your Honor pointed out earlier, showing that this man was fully capable of representing himself and in fact proved himself a skillful advocate. Why shouldn't the trial judge have thought, Yeah, he's intelligent, but he's nuts. I better get him examined, see if he's competent. The trial, I don't know why the trial court... I knew a guy, actually, a friend of mine. He was paranoid schizophrenic, controlled by medication, and he was employed by the Census Bureau at a very high level as a statistician. He was really extremely intelligent. It's not incompatible. That's true, Your Honor. In fact, case law from this court, the Ninth Circuit, establishes that. Just because you have a mental illness does not render you, per se, incompetent at the time of trial. I think the guy that invented game theory was highly intelligent, but not one of the inventors of game theory. Absolutely, Your Honor. I think there isn't a saying... At some point, the nuts get in the way of the intelligence in such a way that you really can't participate in a trial in a meaningful way. Exactly. So was there an adequate basis for the state court's decision that that didn't happen in this case? Yes, Your Honor. That point was never reached in this case because of all of the other conduct exhibited by Petitioner. And that conduct included making very well-drafted and well-argued pretrial motions, skillfully conducting jury selection where he actually exercised... One of the things that may have happened here is that as time went on in the trial, weird things started showing up. We started talking about people making hand signals to him and strange kinds of receptors and things that appear should have set off alarms. And interestingly enough, did set off alarms for two different judges shortly thereafter with a resulting declaration of incompetence about two months after the trial was over. Now, of course, that doesn't prove that he was incompetent during the trial, but the basis for the other judges having an inquiry were not dissimilar, were they? In other words, what was different from some of these things that happened during the trial and the things that happened around the time of sentencing that led to an inquiry into his competence at that point and a declaration of incompetence? Well, first, Your Honor, we're not... The focus here is not on what the other trial courts did. But to respond to Your Honor's question, the difference is two things. First, those actions, assuming they did exhibit or show mental incompetency, those signs did not occur until after he was convicted. They did not manifest themselves during the trial. It could be very well that maybe he was competent during trial and then after he was sentenced or after he was convicted, that, I don't know, triggered something, and maybe that's when he lapsed into mental incompetency. That's just pure speculation. But the point is he did not exhibit that conduct during trial. He said at trial, I believe this was at trial, you know, when my head starts hurting, it just goes like that. I can't get medical treatment. I can barely talk. Both of my receptors are plugged up. I'm very unhappy and miserable. And then the judge says he's playacting. And then there's just things that keep happening. There's this thing about the people in the back of the room who are sending him signals. And that was all during the trial. That is true, Your Honor, but we must also look at all the other parts of the record showing a very lucid man who was able to conduct himself skillfully as a self-represented defendant. And he did that consistently throughout trial. Sure, the trial transcript is sprinkled with incidents of bizarre behavior, but this Court has repeatedly held that bizarre behavior or eccentricity does not equate to incompetence. I have three procedural questions. One is you make a Teague argument in your briefs, which I find sort of astonishing. Are you still standing on that? I will submit on our Teague argument. We only made that argument to show the Court that Teague can be applied in situations such as this. The other thing I want to ask you about is there is a box of law that says that you can't substantively you can't try that as a substantive due process violation to try somebody who's actually incompetent. There is an abundance of law that says that from the Ninth Circuit. I concede that. But the relevant authorities that address this issue, Pate v. Robinson, Drobe v. Missouri, and — Why is the Supreme Court requiring that you have procedural protection of a right that doesn't exist? Well, we're not saying that the Supreme Court does not entitle Petitioners to that kind of procedural protection. All we are arguing with respect to the Teague argument is that Petitioners or defendants are limited to making a — Do you need a Teague argument? I mean, I thought all you really needed to argue was that the State court decision is in contrary to or an unreasonable application of constitutional law as determined by the Supreme Court of the United States as opposed to as determined by the Circuit Court for the Ninth Circuit. Yes. That is the base. That's really the crux of our position. And that's not a Teague argument. No, that is not a Teague argument. Second of all, do you think that there is an ineffectiveness issue in this case with regard to the lawyer who handled the new trial motion and did not ask for an FDIC trial? And that was the other question I wanted to respond to, Your Honor, when I began. To the extent that counsel is now raising an ineffective assistance claim to that lawyer, that claim has been — that claim is unexhausted. In his appellant's opening brief, he mentions Attorney Moore. That's the pretrial attorney with respect to his discussion of ineffective assistance. And, in fact, that's understandable because throughout the appellate or district court proceedings, State appellate court proceedings, the focus was on Attorney Moore, not on that new trial motion attorney. The focus may have been, but I'm asking a technical exhaustion question. And the — And a waiver question in the Federal courts. Was it raised in the State court adequately and was it raised here adequately? No, it was not. And, therefore, it is unexhausted. And, similarly — and this, I think, is a closer call. What about — is there a separate knowing and voluntary waiver of counsel in this case, i.e., the second issue in Caduna's, as to whether, given the particular form of his craziness, i.e., his sense of sexual exploitation by his lawyer, that his decision to represent himself wasn't knowing and voluntary? Quite aside from more general competency questions. Ferretta says that in evaluating whether a defendant is capable mentally of knowingly waiving counsel and representing himself, is assessed based on evidence at the time of the Ferretta motion, at the time of the Ferretta hearing. We cannot look at subsequent conduct of a petitioner or a defendant to gauge whether or not that decision — that decision was made at the time of the Ferretta hearing. And we had a definite determination that this actually happened and that he really did think his lawyer was molesting him. And that is why he gave up. And his lawyer wasn't molesting him. He was having delusions. And that's why he decided to — it's because of this complete confusion that he decided to represent himself. He — that would be too bad for him, and it was still a knowing and voluntary waiver. That's not what we're saying at all, Your Honor. And we're not saying that because Petitioner himself, at the Ferretta hearing, told the Court thoroughly why he wanted to represent himself and did not — Well, I understand the fact finding. But suppose there was a — we had a hearing and we discovered that he — there's something he wasn't telling the Court at the time, which is that while he was — he really wanted out of the situation because he thought the lawyer was going to rape him, he wasn't going to tell the Court that, so he told him a different story. But that — but the real reason was that he feared sexual molestation. And that was a finding of fact that that was the case. Well, I would resubmit on the holding of Ferretta, which clearly states that you have to look at the evidence at the time of the hearing. However — Your answer is yes, if that were the case, it would still be too bad. Yes, based on Ferretta. Yes. Your time has expired. Thank you, Your Honor. Your Honor, and the problem is the Court manages to provide judges with an R.T. site. Give us the number. It's where Mr. Williams advised the trial court that he had told Lori — Don't make an argument. The time is up. Give a number. It's R.T. 617. Thank you very much. Thank you, Your Honor. Thank you, counsel. Williams v. Plyler is submitted.
judges: Noonan, Kleinfeld, Berzon